# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 4:09-CV-00068-M

SWEDISH MATCH NORTH AMERICA, INC.            PLAINTIFF

V.

JUANITA TUCKER and
MARY NOVEMBER            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment by Juanita Tucker and Mary November to resolve a dispute as to the beneficiary of Bennie Hall's employee profit-sharing retirement plan. Fully briefed, the matter is ripe for decision. For the reasons that follow, both motions are **DENIED**.

## I. INTRODUCTION

Bennie Hall began working at Liggett & Myers Tobacco Company (now Swedish Match North America, Inc.) in 1968 in St. Louis, Missouri, and was a participant in the company's retirement plan. On January 23, 1970, Bennie signed and presented a beneficiary designation form making his sister, Juanita Tucker, the sole beneficiary of the plan. In 1972, Bennie moved to Owensboro where he met Mary November. Bennie and Mary resided together from approximately 1972 through 2002; they also had a son, Eric Hall, who was born in 1979. On or about December 9, 1998, Bennie allegedly submitted a change of beneficiary form to Swedish Match designating Mary as the primary beneficiary of the plan

1

and Eric as the secondary beneficiary.

This change was confirmed by correspondence from T. Rowe Price dated January 12, 1999, as well as by over 30 subsequent quarterly account statements that were mailed to Bennie's address. However, Bennie did not sign the 1998 change of beneficiary designation form himself. Mary alleges that she signed the form at Bennie's request, just as she would routinely sign Bennie's tax returns and other important documents for him. Bennie's co-workers have testified that Bennie had trouble reading and writing, that he tended to avoid paperwork, and that he would request assistance signing his name. Nevertheless, the record contains loan applications, a change of beneficiary form for an Owensboro Federal Credit Union account, and the retirement plan beneficiary designation in favor of Juanita Tucker, all containing Bennie's signature.

Bennie died on August 5, 2007. Swedish Match brought this interpleader action on November 13, 2008, to resolve the beneficiary dispute between Mary and Juanita.

## II. STANDARD

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific

facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

The parties agree that Bennie's plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Under the ERISA statute, courts as well as plan administrators "determine the insured's intent by the designation on file at the time of the insured's death." Unicare Life & Health Ins. Co. v. Craig, 157 Fed. App'x 787, 791 (6th Cir. 2005) (quoting Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126, 130 (6th Cir. 1996)); see also McMillan v. Parrott, 913 F.2d 310, 312 (6th Cir. 1990). In this case, the plan documents indicate that Mary November is the beneficiary. However, as Juanita notes, there is a problem: Bennie did not sign the 1998 form changing his beneficiary from Juanita to Mary, Mary did. The question in this case is therefore whether the 1998 designation with Mary's "Bennie Hall" signature is enforceable.

3

Juanita argues that the 1998 beneficiary designation is not enforceable because it does not comply with the terms of the ERISA plan. She also argues that the doctrine of substantial compliance is not available; that, if it is, the Sixth Circuit standard is "more rigorous" than other standards; and that there is insufficient evidence of substantial compliance because Mary's testimony that she signed the form at Bennie's request is inadmissible as hearsay under Fed. R. Evid. 801 or as an "uncorroborated" or "self dealing" statement of "oral agency." (Response, p. 9). Mary counters that the 1998 designation complies with the terms of the plan because it was "in writing"; and she contends that the designation substantially complies because Bennie's intent to name her, and his efforts to do so, are clear from the record evidence. The Court considers the arguments in turn.

A.

Mary argues that "[t]he Plan's terms solely required Mr. Hall to designate his beneficiaries 'in writing.'" (November's Response, p. 7). Thus, she says, the 1998 form with her "Bennie Hall" signature actually satisfied the requirements of the plan because, even though Bennie did not sign the form himself, the change was still *in writing*. Id. The Court disagrees. It is true that the plan provides that "each Participant shall have the right to notify the Administrator *in writing* of any designation of a Beneficiary . . . . [and] [s]uch designation may be changed from time to time by notice *in writing* to the Administrator." (DN 1, Exhibit #5, § 7.3) (emphasis added). However, this means only what it says: that the change must be made "in writing." It does not mean that that writing does not have to contain the participant's signature.

4

Section 15.8 clarifies the "in writing" requirement. It states that "all notices required to be given in writing and all elections, consents, applications and the like required to be made in writing . . . shall be invalid *unless made on such forms as may be provided or approved by the Administrator . . .*" (DN 1, Exhibit #5, § 15.8(a)) (emphasis added). Because Bennie was required to use the change of beneficiary form provided by his company, and because the form in this case included a space for the "Participant's signature," (DN 51, Exhibit #7), the Court concludes that Bennie was required to sign the form in order to validly change his beneficiary.[1] Cf. Dunn v. Cox, 560 F.Supp.2d 1247 (M.D. Fla. 2008) (finding that "the Participant's signature is required for a valid beneficiary designation to be made" in significant part because "[t]he form itself clearly includes a place for a signature . . .").

B.

1.

The question, then, is whether the doctrine of substantial compliance saves Mary's claim. "While other circuits have embraced the substantial-compliance doctrine," the Sixth Circuit has observed that its "take on the doctrine is less clear." Kmatz v. Metropolitan Life Ins. Co., 232 Fed. App'x 451, 456 (6th Cir. 2007). The lack of clarity stems from the fact that the circuit court has repeatedly applied the substantial compliance doctrine in some cases, see id.; Life Ins. Co. of N. Amer. v. Leeson, 81 Fed. App'x 521, 523-24 (6th Cir. 2003) (finding no substantial compliance because while "[i]t can fairly be argued that James

---

[1] Section 15.8(b) provides that the company may deviate from this requirement if it so chooses, but there is no evidence that the company did so choose here.

5

Lawson took steps toward changing the beneficiary in this case[,] . . . it cannot be concluded that he did all that he reasonably could have done"); Aetna Life Ins. Co. v. Weatherford, No. 90-55 85, 1991 WL 11611, at * 1, *6 (6th Cir. Feb.5, 1991), while it has expressly found the doctrine preempted by ERISA in others.[2] Unicare Life & Health Ins. Co. v. Craig, 157 Fed. App'x 787, 791 (6th Cir. 2005) (explaining that "[t]he magistrate judge followed the majority approach and examined the beneficiary-designation issue under the 'substantial compliance' rule . . . [and] [t]he magistrate judge erred") (citing Metropolitan Life Ins. Co. v. Pressley, 82 F.3d 126 (6th Cir. 1996); McMillan v. Parrott, 913 F.2d 310, 311 (6th Cir. 1990)).

The Court is unable to reconcile these cases. However, every other circuit that has addressed the question has found that the doctrine of substantial compliance is available to determine an ERISA beneficiary, either as a product of state law, see Metropolitan Life Insurance Co. v. Kubichek, 83 Fed. App'x 425, 429 (3rd Cir. 2003); BankAmerica Pension Plan v. McMath, 206 F.3d 821, 827 (9th Cir. 2000); Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1045 (10th Cir. 1992), or as a product of federal common law. See Guardian Life Ins. Co. of America v. Finch, 395 F.3d 238, 242 (5th Cir. 2004); Aetna Life Ins. Co. v. Wise, 184 F.3d 660, 663 (7th Cir. 1999); Hill v. AT & T Corp., 125 F.3d 646, 648 (8th Cir. 1997); Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 565 (4th Cir. 1994). And courts within the Sixth Circuit have also consistently applied the doctrine of substantial compliance

---

[2] The Kmatz court noted this ambiguity and expressly declined to decide the question, saying "[w]e need not determine whether the doctrine has force in this circuit because, even if we engaged in a substantial-compliance analysis, Kmatz's actions fall well short of satisfying it." Id. at 456.

in this context. See, e.g., Metropolitan Life Ins. Co. v. Downey, 2005 WL 2372135, *2-*3 (W.D. Ky. 2005) (finding that a beneficiary designation form on file with a plan administrator "substantially complied" with the terms of the applicable ERISA plan, notwithstanding certain errors); Moukalled v. Minnesota Mut. Life Ins. Co., 2002 WL 31008839, *8 (E.D. Mich. 2002) (concluding that "[t]he Court cannot find that Decedent . . . substantially complied with the requirement[s]" of the plan), aff'd Moukalled v. Minnesota Life Ins. Co., 88 Fed. App'x 865, 866 (6th Cir. 2004).

In light of this precedent, and in mind of ERISA's policy of promoting uniformity, McMillan, 913 F.2d at 312, the Court will follow the Sixth Circuit's approach in Leeson and Weatherford and apply the federal common law doctrine of substantial compliance here.

2.

Juanita argues that the Sixth Circuit federal common law standard that "an insured must do 'all that he reasonably c[an] do to meet the conditions of the policy,'" see Weatherford, 1991 WL 11611, at * 5 (quoting Magruder v. Northwestern Mutual Life Ins., 512 F.2d 507, 509 (6th Cir. 1975) (pre-ERISA)), is "likely more rigorous than the Fourth Circuit" standard that an insured must "evidence[] his or her intent to make the change and . . . attempt[] to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions under the policy," Phoenix Mutual Life Ins. Co. v. Adams, 30 F.3d 554, 559 (4th Cir. 1994)). (Tucker Reply, p. 3). The Court disagrees. Although the language of the Sixth Circuit test sounds more rigorous, the cases prove otherwise. In Weatherford, the Sixth Circuit treated several

7

state "substantial compliance" standards with similar differences in language, e.g.,"do everything [the insured] could do" versus "take reasonable steps," as one and the same, id. at *4; and, in Leeson, the district court cited Weatherford for the proposition that "[u]nder the federal common law, the 'substantial compliance' test controls" and then applied the Fourth Circuit's Phoenix test. Life Ins. Co. of North America v. Leeson, No. 00-CV-1394, 2002 WL 483563, *6 (S.D. Ohio March 19, 2002), aff'd Leeson, 81 Fed. App'x at 521. Because the Sixth Circuit has treated its standard as interchangeable with other standards, the Court rejects Juanita's argument that this circuit's standard is comparatively more rigorous.

3.

In this case, Mary contends that Bennie substantially complied with the requirements for changing his beneficiary because he "request[ed] that Mary November complete th[e] form on his behalf" and he "submitted [the] form to the Plan Administrator." (November Brief, p. 18). Juanita counters that the 1998 change did not substantially comply because "[t]here is no evidence that Bennie delivered or mailed the beneficiary designation himself," (Tucker Reply, p. 2), and because Mary's testimony regarding Bennie's alleged instructions to her to fill out the form is inadmissible as hearsay under Fed. R. Evid. 802 or as an "uncorroborated" or "self dealing" statement of "oral agency." (Tucker Brief, p. 9). The Court finds Juanita's arguments unconvincing. First, the record shows that when Mary was asked whether Bennie "went to work with [the signed change of beneficiary form] and made his changes" Mary responded, "I guess so, yes." (DN 49, Exhibit #8, p. 7). Mary has also testified that Bennie "told [her] he wanted [her] to sign the papers so he could take them back

8

in the morning." (DN 49, Exhibit #10). And the record shows that the company received the form and that Bennie was sent over 30 quarterly statements confirming that Mary was the beneficiary of his plan. This is enough, in the Court's view, for a jury to reasonably conclude that Bennie returned the form to his employer.

Second, contrary to Juanita's contention, Mary's testimony that Bennie "asked her to sign [the form]," "told her he wanted [her] to sign [it]," and "sat there and told her what to put on [the form]" is not barred by Fed. R. Evid. 802. (November Affidavit, p. 13). Assuming that this testimony is offered for the truth of the matter asserted, the Court concludes that it is admissible under the exception for "statement[s] of the declarant's then existing state of mind," i.e., Bennie's "intent" to change his beneficiary. See Fed. R. Evid. 803(3); cf. Staelens ex rel. Estate of Staelens v. Staelens, 677 F.Supp.2d 499, 503 (D. Mass. 2010) (holding that statements made by ex-husband as to his intent to retain ex-wife as beneficiary were admissible under state of mind exception); Phoenix Mut. Life Ins. Co. v. Adams, 828 F.Supp. 379, 388-89 (D.S.C. 1993) (finding that decedent's "statements clearly indicate a desire to change [his] beneficiary . . . . [and] are therefore admissible pursuant to Rule 803(3)"). Finally, the Court rejects Juanita's argument that Mary's testimony is barred as a "self-dealing" statement of "oral agency." The cases cited in support of this argument deal with common law limitations on ostensible agency and the power of attorney. See, e.g., Martinez v. Arrow Truck Sales, Inc., 888 F.2d 64, 68 (8th Cir. 1989); Townsend v. U.S., 889 F.Supp. 369 (D. Neb. 1995). Here, it does not matter whether Mary had, or appeared to have, the ability to legally bind Bennie; all that matters is whether Mary's testimony shows

Bennie's intent to change his beneficiary designation, and it does.

This is not to say that summary judgment for Mary is proper. It is not clear from the record that Bennie "request[ed] that Mary November complete th[e] form on his behalf," (November Brief, p. 18), since that fact is based entirely on Mary's self-serving testimony as beneficiary of the alleged change. See Notes of Advisory Committee on 1963 Amendment to Rule 56, Federal Rules of Civil Procedure (explaining that "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."); see also Willetts v. Ford Motor Co., 583 F.2d 852, 855 (6th Cir. 1978). It is also not clear that Bennie "submitted his beneficiary designation form to the Plan Administrator." (November Brief, p. 18). A jury, as explained above, could reasonably conclude that Bennie returned the form to his employer – but a jury could also reasonably conclude that he did not. Because the Court believes that the question of substantial compliance turns on these genuine issues of material fact, both motions for summary judgment will be denied.

### IV. CONCLUSION

For the foregoing reasons, the cross-motions for summary judgment by Juanita Tucker and Mary November are **DENIED**.

cc. Counsel of Record